United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. We have three appeals to hear this morning. Council, I think you know the drill. We're familiar with your cases. We've read your briefs, the authorities cited in your briefs, and we've looked at at least portions of the record. And in the limited time that is available to you this morning, you should feel free to go straight to the heart of your argument in the event that you're not able to issue briefed. That doesn't mean that it is in any way forfeited. It'll still be under submission. We will probably have some questions this morning. Be mindful of the clock. If you're answering a question from the court and the time expires, feel free to finish your answer, but do pay attention to when the clock starts. Our first case this morning is United States v. Trader. Mr. Peacock, will you begin? Thank you, Your Honor. If it please the court opposing counsel, good morning. My name is Fletcher Peacock. I represent Mr. Trader and I represented him below as well. In this case, Mr. Trader had a reasonable expectation of privacy in the Kik cellular phone records which the government obtained from the company Kik. Kik is a cellular phone application which only runs on cellular phones, so all of its records are cellular phone records. Mr. Trader had a reasonable expectation in the privacy of that location information, and that reasonable expectation has been recognized and validated by the United States Supreme Court in the Carpenter case. More importantly, Mr. Trader had a reasonable expectation in the privacy of his own home, which was invaded by the government's surveillance in this case. That right, as we know, was Kylo versus United States many, many years ago. This case is a hybrid, if you will, of sorts. Carpenter addresses the cell phone records in the hands of a third-party provider, in this case Kik, and recognizes that there is a threat to those records. But it's a hybrid because it also, and perhaps more importantly, concerns the monitoring of Mr. Trader's activities in his home over a 30-day period through obtaining these records. The Supreme Court said in Carpenter that it was not addressing other business records that might incidentally reveal location information. Why aren't the IP addresses and email addresses covered by the ordinary third-party doctrine and by that very clear expression by the Supreme Court in Carpenter to limit its holding and not reach other business records that only incidentally reveal location information? It seems to me that both IP addresses and email addresses are much more akin to those kinds of business records than the cell site location records. Let me respond in two parts, Your Honor. The first is the whole gist of getting the records from Kik by law enforcement was to obtain Mr. Trader's locations and to monitor his locations. IP addresses go directly to a location. In the case of a cell phone, a cell phone either uses a wireless network or it however it's intended. So first of all, those records are not incidentally linked to location. Those records are inherently linked to location. But also just as important, when one reads the Carpenter case carefully, Justice Roberts has a very, I think, important quote in there where he says at page 2,220, virtually any activity on the phone generates CSLI, which is cell site location information, including incoming calls, texts, or emails and countless other data connections that a phone automatically makes when checking for a location. So what we're talking about here, Your Honor, we are talking about a strictly cellular phone application, which the court clearly anticipated in Carpenter. Yeah, but cell phones generate location information without any affirmative act on the part of the user. Isn't that right? It depends on the technology. The technology is very complicated, but if a cell phone will switch from tower to tower when it's on a, when it's moving. But the only thing the cell phone user can do is to completely shut down the phone. That's the only way to avoid being tracked by these kinds of networks. Isn't that right? I mean, in reality, there are other ways. I mean, first of all, the person doesn't need to take the phone. Well, sure. Okay. Secondly, we have a whole new generation now, phones which are just what we call pay for minutes phones, which are not trackable to any individual. So in essence, there is a whole new cellular technology now, which is not trackable. Your client would have had to have voluntarily and affirmatively acted to open up an app and log in, which would have then disclosed his internet protocol address, right? Well, that, no sir. Kik is a two-way application, so he certainly can, he certainly can contact the application himself from his cell phone. But once somebody installs the Kik app, just like any app that you might have on your phone, whether it's Google or whatever it is, that app will also seek to contact you and provide you with information. The way that the system works, these companies are very aggressive about trying to get push information to the user as well as receive contact from the user. Many of these applications, the information pushed from the provider is much more voluminous than the contacts made by the actual user. Well, if Trader did not use the app, there would be no IP address log, would there? If he had not installed the app, there would not be, sir. I know I'm asking if he didn't use it. No, there still would be. So for instance, when Mr. Trader would be, without the app open? Yes, the app, so if I'm on the app, and let's assume it's not open. Right, not, well, it stays open for practical purposes. So once I install the app on my phone, other people from throughout the network, the Kik network, can send me messages. Kik will then seek out my phone and they will provide me with that message, and in doing so, they will make a record of that incident. Let me put the question this way, and just help me understand this. Yes, sir. If he didn't actually use the app, go to it, turn it on, would there be any IP address log? One of the problems that we have in this case is we don't have an evidentiary record which would answer your question, Your Honor, and I am certainly not an expert. I believe... Right, but is there anything in this record that would suggest that if he didn't use the app, in the sense that I'm talking about, turning it on, there would be no IP address log? That would be correct, wouldn't it? I can't, I can't, I would be overstepping my, my technical expertise if I tried to answer that. I believe, however, Judge, that if Kik sends you a message, yes, there is a record of that IP address, because the service locates you and then provides you with that message. Let me ask you a slightly different question. In your reply brief, you said that there were 593 logins, 413 of them from Mr. Trader's home, and 180 while he was outside of his home, from his phone's data connection or a mobile hotspot. There was no site for that. Where does that come from? Your Honor, that was, those are facts that was alleged in my motion to suppress. The court did not grant me an evidentiary hearing, so I don't have, I was not able to place those documents in evidence. So there was no declaration that would have contained that information? No, those were strictly allegations that, I mean, it was provided in discovery, Your Honor. That's where I obtained the information from. Were there documents attached to your motion to Supreme Court raised in Carpenter was that the information essentially was pervasive? Were the location data created a map of the individual's entire daily life? Here that would not be the case, would it? The IP address would only show where the defendant accessed the KIC application. No more, no less. Would that be an accurate statement? No, sir. No, sir. Because simply that, and you know, volume is certainly not the question under Carpenter. But however, here we do have a lot of volume. And so for 30 continuing days, law enforcement was able to monitor Mr. Trader's activities within his own home. Obviously, it would have known that he had a cell phone. Obviously, it would have known from the timestamps when he was awake, when he was, you know, when he was resting, all those things. And as Justice Scalia said, in the Kylo opinion, all details inside the home are intimate details, and they are not the business of law enforcement or the government in general. Mr. Peacock, you've saved five minutes for rebuttal. Let's hear from Ms. Hernandez. Thank you, sir. Good morning, Your Honors. May it please the Court. Christine Hernandez on behalf of the United States. With regards to the first issue alleged in the appellant's brief, I agree with Your Honor's questioning that this case differs vastly than the Carpenter case, which the appellant squarely relies on. And this is the reason why it differs. First and foremost, the Carpenter court found that the collection of cell site location information was so great and of such a magnitude that it chronicled the detailed movements, as Your Honor stated, of people's past movements and potential future movements in ways that technology had never seen before. And this chronicling of this information was done without any active participation of the person who carried the phone. As Your Honors probably have near you or beside you, everyone here has a cell phone. There are more cell phones in this country than there are people. Unless someone uses the cell phone with regards to an application or a website, an IP address, as Judge Marcus noted, would not be generated. This is vastly different than cell site location information, unless, like Judge Chief Pryor indicated, unless you leave the network, unless you turn off the phone. Cell site location information is consistently generated. If the phone is on and someone is receiving a phone call or a text message, whether you pick up that phone call or whether you answer that text message, that there is going to be a cell site location information. The Carpenter court found that because of this passive collection of information, there needed to be some protection and found that the third party doctrine didn't apply. Whereas in this instance, the third party doctrine clearly applies to the records obtained by kick in this instance, because as Judge Marcus indicated, 594 log ons. That means that over 590 times the appellant in this case, went to the kick application, opened it up and used it. Now counsel indicates that, or indicates that somehow the kick application is running on the phone. But that is not it that defies logic in that if you operate a phone, there are certain buttons that you could push, push on the phone that allows the application to remain open allows you to remain on. But again, it is the affirmative act of an individual that allows that to happen. And that is what happened in this case. The appellant cannot claim that the information that he turned over to kick to use this application was somehow not turned over voluntarily. He used his email address, he used a username, he logged on. So there is information in this record that shows that he voluntarily disclosed this information and this information swaps false squarely under the third party doctrine. It's interesting to note that, you know, counsel relies on carpenter, and Judge Marcus, as you indicated, cell phones are pervasive in our society, the use of cell phones are pervasive in our society. Again, your honors probably have your cell phones right next to you all, I would venture to guess that neither or anyone on this on this zoom has the kick application. But it would be true, would it not that the IP address can be used to derive an individual's location? Judge, I would dispute that the 26 pages that were turned turned over and docket entry 10, as part of the standing discovery order, essentially provide 26 pages of a string of numbers that in and of itself provide no information had the kick records provided location information, then the agents in this case would not have had to done an IP registry search to find out who was the to serve an emergency disclosure request on Comcast, there was no an IP address cannot be used to derive an individual's location. Judge, based on the records that we have, those 26 pages do not provide location information, unless there are additional steps taken by the parties to obtain that information. There are essentially additional steps would have to be taken. The reason I asked the question is, I may be operating under misapprehension, but I thought that the IP address can be used to derive an individual's location. This has nothing to do whether the act is passive or active. But just if indeed it is used, would that not enable the that on 500, almost 600 occasions, he used it from his home, therefore, you could derive the information that he was at home at the time, and that on 183. So other occasions, he used it from different locations. And you could zero in on each of those locations, as well, each time that happened. Have I misunderstood that? Judge, no, you did not. In this case, the records that were provided by kick provided an IP address, which essentially are a string of numbers. After they received those records, the agents based on those 26 pages did not know the location of where the kick application had been accessed. So they had these records are device specific, right? Not location. These these records are device specific. So the IP address would tell you what address what what device has accessed the internet, but would not tell you where that device is. It would give you it would give you the device information and it would give you where with in reference to the IP address, the the device access, the particular website or the application, but I know but but but for example, if I'm using my cell phone with the kick app, right, and I am accessing the internet, the records would disclose the fact that I have done that with that device, right. But it would not but it would not tell you whether I was at home or at work or somewhere else. When I did judge it will give you an IP address. But it won't give you a specific location address. It will give you the address, it won't tell you where the device is physically located. Well, yes, that's correct. That's correct. If I were a law enforcement officer, and I had the IP address, I would have to take additional steps to pinpoint the location from whence the application was made. Do I have that right? That's exactly correct. What steps would have to be taken? And how easy would that be to do? Well, the steps that would have to be taken, and in this case, the steps that were taken was there would have to be a search in the IP registry address to see who was the provider for that IP address. Once you've identified the provider, you would have to serve some sort of subpoena. In this instance, it was an emergency disclosure request pursuant to 18 USC 2702, alleging that there was an immediate danger or physical harm. And that would have to be served on the provider and only if the emergency that existed would then those records be released. So if I were a law enforcement agent, I would have to take two additional steps to find out the location, the physical situs from whence I'm logging on and seeking to use that app. Do I have that right? Yes, Your Honor. Thank you. In addition, yes, it's really about the location of the device that you'd have to figure out over and above the IP address. Correct. There are additional steps as they were the steps were taken in this case to identify where the location where the device access this application, and who in fact was the individual because although you may have an IP address, you don't necessarily know who in fact access that website or application. And I want to note that the carpenter court found that cell site records didn't require the additional steps the information contained within cell site location information gave law enforcement all the information that they needed to have to see when the cell where the cell phone was what tower it was nearest, what address that tower was located. And so that's vastly different than the situation that we have here in that agents needed to take the additional steps to to figure out where this IP address was registered to what information they can glean from that address, and whether or not they can locate the individual who was involved in this case, the appellant with the conversations with a nine year old minor child. So the reliance on carpenter is very distinguishable here. And that is why the government filed its supplemental authority that every case before carpenter and every case since carpenter has held that IP address information and subscriber information falls squarely under the third party doctrine. They have found instances, whether it was a computer that generated the IP address, or whether it was a cell phone that generated the IP address, they found that when an individual voluntarily discloses information to a third party, in this case, the appellant disclosed certain information in order to use the kick application, they cannot then claim a Fourth Amendment protection or Fourth Amendment right in that information. In this case, the appellant made the affirmative and volitional step to access that application, and in doing so, allowed kick to chronicle that he again, it's worthy to note that these 26 pages that were the basis of the motion to suppress, and and some reference was made that the court did deny the motion to suppress the hearing in this case, and I would submit to the court that the facts alleged in docket entry 13, which was the defendant's motion to suppress, basically said that these 26 pages provided login information and subscriber information. And the court had no additional details that were alleged in that docket entry 13, that would dispute what the current status of the law was. And that is that those records fell squarely under the third party doctrine, and that the appellant in this case, affirmatively disclosed this information to kick. In addition, email addresses even further afield, isn't it? Excuse me, I'm sorry, your honor. The email address is even further afield, isn't it? Yes, judge these, you know, email addresses, the contents of the email addresses, obviously are, you know, there are Fourth Amendment protections that concern the contents of emails. But the email address that the appellant in this case provided, he voluntarily disclosed that in order to use the kick application. This is information that individuals turn over in order to use an application, a website, and your honors have phones, whenever you sign into an application, or you sign into a website, there's pop ups, where it says, do you want push notifications? Okay, explain to us where the law enforcement got the email address. Did they get it from the kick? Yes, Judge Hull, as part of the discovery that was turned over in docket entry 10, the 26 pages showed the IP address, the email information, the username, and the name that the appellant went by while using that. You explained how you find out the device that's connected with the IP. How do you find out whose email that is? Well, the in this instance, they did not serve any search warrants on that email address in order to obtain more information. What they did was they did a property record search of the home after they received the internet subscriber internet provider information that that IP address was registered to a specific residence. They did a property search on on that residence and found that Shelly trader, the appellant's mother resided there. They also did a Florida DMV search to find that the appellant had listed that residence as his mailing address. So with regards to you know, any furtherance of the email address, the appellant's first name is Scott. His last name is trader he used once they they saw that the email address was s trader at Yahoo. And they saw that someone by the name of Scott trader listed his mailing address as that residence. They But they couldn't do that just by virtue of the 26 pages that were provided by kick. There was an investment. Isn't the answer though about the email address that when trader you when he registered with kick to use their app, he voluntarily disclosed an email address to them so that when they then obtained records, so when when when the government obtained records from kick, that's how they had that email address. Isn't that right? Yes, Chief Judge, that's exactly right. And our common sense tells us, every time we go to a website, or anytime we sign up for an application, the first thing that they ask us is input your email address, you know, and they do so for commercial reasons. They do so to be able to contact you. And you can choose whether or not to turn over that information and not use that IP addresses are associated with all kinds of devices, right? So there could be household appliances, gaming consoles, any number of devices, isn't that right? Yes, Judge, they work in conjunction with the internet provider. And so if someone uses a gaming console, or someone uses Alexa, for instance, it's going to generate an IP address, but it only does so upon the affirmative use of the individual. Your time is expired, Ms. Hernandez, do you have anything else to add? I just wanted to say that we may wake up one day and find that the use of a social media application is as pervasive as a cell phone. But today is not that day. And this record before this court shouldn't extend the carpenter requirement to issues such as IP addresses. I will rely on the arguments I made today as well as those made in the brief. And I thank you for your time. Thank you, Mr. Hernandez. Mr. Peacock, you've saved some time for rebuttal. You Mr. Peacock, you need to remove your mute. My apologies, Your Honor. The, the government argument focuses on a difference in form, but no difference in substance. The IP address here is, is totally about location, Your Honor. This is what law enforcement does in a regular basis in in such cases when they're dealing with internet based offenses. They obtain the IP address from whatever medium it is that's being used. They then go to the service provider, which in this case was Comcast. They asked the service provider what, who the subscriber was for the for that tells you that tells you what device is accessing the internet, but it does not tell you where the device is located or whether or where the user is located. But it only tells you where it only tells you what device access the internet. No, sir. Actually, I don't I respectfully disagree. In this case, in particular, Mr. Trader accessed the wireless internet system at his mother's house. That wireless internet router gets an IP number. That's the IP number that they got in this case. Any device that hooks up to that wireless system gets what's called a private IP number, which is not published to the outside world. It's it's only so that that router can recognize authorized devices on that wireless system at his mother's house. You could move the router. It happens to be at her house. But you could move it Yes, sir. You could move any router. But in this case, you can move any device anywhere. And it won't tell you it just happens to be at her house. And and and you can surmise that it's probably being used there. But but in fact, you could actually locate it somewhere else. Well, the record wouldn't tell you that. But Your Honor, if you did that, you would likely get a new IP address. IP addresses contained within that series of numbers, geographical information, and that's how those IP addresses are assigned. And so if you say you took your router and you moved to California, you would very likely get a new IP address. Now, once again, what if you just moved across town? Judge, I don't know. I apologize. I'm not I'm not that well versed on it. But in in this case, in particular, now, my point is this, it does not track your physical movements to the detail that that the cell site location records do that were at issue in Carpenter. Oh, it's I believe it's greater than that, Your Honor. I believe it's greater because in this case, the agents were able to to state to the court that they had 30 days of monitoring the same IP address at the same physical address. And so they did they did use it for for monitoring physical location, there's no way to get in the physical location, those 30 days did not change. It was the home, right? Yes, ma'am. All right, so help me with this. You know, one thing about Carpenter was a telephone. You know, we did toll records forever. We still do toll records. Nobody complains about toll records from phones, a landline phone, you have a toll records, you can get toll records, you know, that the toll rate is tied, that one location, it seems the difference to me is, is this one location? I mean, what your cases bound up in the facts and and and one location here is not tracking the person when it's just one location is a fixed location. In fact, you just made the point the router is tied to this location is right to the device is tied to the router, the routers in the home, we know 30 days, it's a home that seems different than moving wherever the guy went, you know, these carbon, these cases of robberies, they're moving over to Wendy's to go into pizza, they're going around here, we know wherever they went all around town. So that to me is maturely different. Help me with that. Yes, ma'am. Well, first off, we need to recognize that approximately 180 of the cell tower, exactly like what happened in Carpenter. So was that from different locations? Or was that from the home location? That was from different locations. When when the phone leaves the home, it goes off the wireless. Now I'm talking about in your case with his IP. Okay, so he took his phone. It's a cell phone application. Yeah, yes, ma'am. When it when it when it gets out of range of the of the over to cell site data, which is called mobile LTE. And did they did they obtain that data? Did they ever get that data? They obtained the IP addresses for that. No, but did they did they get the data from mobile LTE about where the cell phone had moved around? If it used cell towers, then whoever is mobile LTE a third party? No, mobile LTE is a technology. Okay, what did they get? Where did they get information where they where he was when he used mobile LTE? No, ma'am. Okay. They did get the IP addresses for the mobile LTE, but they did not get cell site information. Okay, Mr. Peacock, you need to wrap it up. You're a minute over. I think I've made my point, Your Honor. I think that this was a violation of the Carpenter shows there was a reasonable expectation of privacy here. And then it was not even the diminished expectation in Carpenter. But because it was in the home, it was a full expectation of privacy, which the government violated. Thank you so much. I'll rely on my briefs for the other arguments in this case. Thank you, Mr. Peacock. We'll move now to our our next case.